THOMAS HINDS LODGE NO. 58 F. & A. M. *v.* PRESBY-
TERIAN CHURCH AT FAYETTE.

[60 South. 66.]

1. LANDLORD AND TENANT. *Contracts. Rights acquired. Dedication.*
   *Lease. Construction. Holding over. Repairs by tenant. Con-*
   *sent of landlord.*
   Under the contract as set out in the opinion of the court in this case
   the church is not the owner of a one-third interest in the building
   and is not entitled to a sale thereof for partition, nor has the church
   the right to the perpetual use of the lower story conditioned only
   upon the payment by it of one-third of all necessary repairs made
   on the building.

2. DEDICATION. *Acts constituting.*
   While no particular form of words is necessary in order to dedicate
   property to a particular use, it is necessary that the words used
   should clearly and unquestionably manifest an intention to
   dedicate the property to the particular use.

3. LANDLORD AND TENANT. *Lease. Construction.*
   A lease between a lodge and a church which provided that "It is
   further agreed by said lodge that if said church faithfully complies
   with the terms and conditions of this lease, that then, at its
   expiration, it may be renewed at the will and pleasure of said lodge
   for such period of time as the lodge then in existence shall de-
   termine," confers no substantial right upon either party, and
   really amounts to an absurdity.

4. LEASE. *Construction.*
   A lease prepared by the landlord should be construed most strongly
   against him.

5. LANDLORD AND TENANT. *Holding over.—Acts constituting.*
   Where during all the time the tenant was holding over after the ex-
   piration of its lease, prior to bringing suit, negotiations looking
   to a renewal of the lease were in progress and nothing occurred
   during these negotiations from which it could be inferred that the
   landlord recognized the tenant as such for a new term, and was
   estopped thereby from disputing the formation of a new tenancy
   and the tenant's holding over was with the express consent of the

landlord, in such case the tenant did not acquire the right to a new term or the right to hold over under a renewal lease.

6. LANDLORD AND TENANT. *Repairs by tenant. Consent of landlord.*
   Mere consent on the part of the landlord that a tenant may make repairs imposes no obligation upon him to reimburse the tenant therefor; in order that consent for the tenant to make repairs may impose such an obligation upon the landlord, the consent must be given under such circumstances as to imply a promise to reimburse the tenant therefor.

7. SAME.
   Where under the terms of a lease it was provided that the land lord would contribute to the expense of repairs made by it or made jointly by the landlord and the tenant, the landlord was not liable to the tenant for repairs by the tenant alone.

8. LANDLORD AND TENANT. *Repairs by tenant. Consent of landlord.*
   Where the landlord was not aware that the tenant claimed the premises and was making repairs by reason of this belief the landlord is not liable to the tenant for the money expended in making such repairs.

9. LANDLORD AND TENANT. *Right to rent—Holding over.*
   A landlord is entitled to recover of the tenant a reasonable rental of the leased premises after notice to vacate is given, but not to rent for such time as he permits the tenant to remain in possession under circumstances indicating that no rent would be charged.

APPEAL from the chancery court of Jefferson county.
HON. J. S. HICKS, Chancellor.

Suit by the Presbyterial Church of Fayette against the Thomas Hinds Lodge No. 58 F. & A. M. in which defendant filed a cross-bill. From a decree granting relief to both parties, both parties appeal.

The facts are fully stated in the opinion of the court.

*Ernest E. Brown,* for appellant.

*Truly, Ratcliff & Truly, R. H. Thompson* and *W. R. Harper,* for appellee.

No brief of counsel on either side found in record.

Argued orally by *Marcellus Green*, for appellant and *Jeff T. Truly, R. H. Thompson* and *W. R. Harper*, for appellee.

SMITH, C. J., delivered the opinion of the court.

In the town of Fayette, Miss., there is situated a two-story brick building which has been used jointly by appellant, Thomas Hinds Lodge No. 58, F. & A. M., and appellee, the Presbyterian Church of Fayette, Miss., since its erection in 1854, the upper story as a lodge room by appellant, and the lower story as a place of worship by appellee. In 1909 a controversy over the ownership and the right to the use of the lower story of this building having arisen, this litigation was inaugurated by appellant instituting in the circuit court an action of ejectment against the church, which suit was afterwards dismissed and an unlawful entry and detainer proceeding begun instead. Afterwards appellee filed its bill in the court below enjoining the further prosecution of this unlawful entry and detainer proceeding, and praying for one of several reliefs more particularly referred to hereafter. Appellant by answer and cross-bill denied appellee's right to the relief prayed for, and prayed that appellee's claim to the use of the lower story be canceled and possession thereof be awarded to appellant, and that it recover from appellee a reasonable rental for the use of the property since the date of the termination of appellee's lease. The The decree of the court below adjudged the title to the property to be in appellant, and denied appellee the right to the use of the building or to demand a renewal of the lease; but adjudged that it was entitled to the money expended by it in making certain repairs on the property, which will be hereinafter more fully set forth, and denied to appellant the right to recover rent for the use of the property since the termination of the lease. Both parties being dissatisfied with this decree appeal to this court, appellant by direct and appellee by cross-appeal.

The facts necessary for an understanding of the points involved herein are about as follows: In 1854 appellant was the owner of a certain lot in the town of Fayette, and was contemplating the erection of a two-story building thereon, the upper story to be used as a lodge room, and the lower to be rented for business purposes. At this time there was no Presbyterian Church in Fayette, but there was such a church at Ebenezer, in Jefferson county, several miles from Fayette. Before this building was erected, the pastor of this church, with the approval of its session, wrote a letter to appellant suggesting that the lower story "be made into a church," and bound himself, if this should be done, "to raise all funds necessary to furnish it in a handsome style, and also to pay a fair portion of the expense of building and the foundation and walls of the first story." His letter then continued as follows: "The lodge, I presume, also needs a church for their own use. Heretofore, I believe, they have procured the use of the Methodist Church on public occasions. But on the plan which I now propose, an arrangement could easily be made by which the lodge can always have a church of their own on these occasions. It would not be necessary for the lodge to alienate the title of any part of the property. The title, I presume, is vested in the trustees of the lodge, and they could still hold the title and have an understanding with the religious body who may occupy the basement story as to their right of worshiping in it. If your honorable body will consent to enter into this arrangement, I will procure the appointment of a committee on the part of the church to meet any committee who may be appointed by the lodge, and the two committees can agree on the amount which I shall raise for the church, the method by which the right of worshiping in the basement story shall be held, and everything else necessary to the arrangement. For further particulars I refer your honorable body to Brother William Johnson, who will explain everything which may

be necessary to a correct understanding of the subject."
Appellant's reply to this letter was embodied in the following resolution: "Whereas a letter has been addressed
to Thomas Hinds Lodge No. 58 of F. & A. M., proposing
to them to convert the basement story of the masonic
hall, now in contemplation of being built in the town of
Fayette and on the lot where the old hall now stands, into
a church for the use and benefit of the society of Christians
called Presbyterians: Therefore, be it resolved, that
Thomas Hinds Lodge No. 58 accede to the said proposition upon the following terms: That the said society of
Christians called Presbyterians shall be at the whole and
sole expense of building the basement story of said hall
and fitting it up as a church in such style as the committees
appointed by the church and lodge may approve. The
ground work being ——— brick thick and the walls being
——— thick. The term of the lease to be as agreed upon
by the committee, John Duncan, Johnson, and Shakleford, who were vested with plenary powers to act with
church committee." It does not appear from the evidence, except as contained in the recital of the lease hereinafter mentioned, executed in 1876, whether or not these
committees ever met and consummated the arrangements contemplated by this letter and resolution; but on
September 30, 1854, appellant's minutes show that: "On
motion of Brother Duncan it was resolved that the lodge
furnish in common with the whole amount of brick that
is now in the kiln, known as that belonging to this lodge,
for the purpose of erecting a new masonic hall. The
basement story to be built by and known as the Presbyterian Church. But should the said amount of brick be
insufficient for the completion of the entire building, the
said Presbyterian Church is to furnish and pay for the
insufficient amount of brick." Nothing further appears
in the testimony relative to the erection of this building,
and it is absolutely silent as to the right by which appellee
occupied the lower story thereof until December 27, 1875.

It seems to be assumed, however, by counsel on both sides, that, whether occupying as tenant or owner, appellee was chargeable with one-third of all necessary repairs made on the building.

In December, 1875, a discussion seems to have arisen between the lodge and the church relative to the payment of the amount which the church seemed to be in arrears with the lodge for repairs made by the lodge upon the building. Thereupon a committee appointed by the church to confer with a similar committee from the lodge executed the following instrument: "Whereas, the Presbyterian Church congregation now occupying the church in Fayette has been for a long time disorganized and is in no condition to pay their *pro rata* of expense on the building, therefore be it resolved, that we, a committee of the Presbyterian congregation agree to pay to the trustee of the Masonic Lodge in Fayette the sum of two hundred ($200) dollars now in partial liquidation of the claim of the masons against the church, and the balance of one hundred and twenty-six ($126) dollars on the first of November, 1876. With the understanding that in future we have possession of the church so long as we pay one-third of the necessary expenses for repairs, we to be consulted upon repairs." The authority of this committee to act in this matter is now disputed by the church, but the only evidence relative thereto was the testimony of one of the members of the committee, who said that it was duly appointed by, and given authority to act for, the church. This matter seems to have been amicably adjusted, and thereafter, on the 1st day of January, 1876, the lodge executed to the church the following lease to the lower story for a period of thirty years:

"This indenture made and entered into this first day of January, A. D. 1876, by and between Thomas Hinds Lodge No. 58 of Free and Accepted Masons, duly incorporated by the legislature of the state of Mississippi of the first part, and J. P. Tunstall, R. H. Forman and Wil-

liam Harper as trustees of the Presbyterian Church of
Fayette, county of Jefferson, and state aforesaid of the
second part, witnesseth: That whereas the said parties
of the first part were aided in building the lower story of
their Masonic Hall Building by the Presbyterian congrega-
tion and the friends of said church; and whereas, it was
agreed at the time said hall was built in 1854, that said
lodge would execute a lease to said church of said lower
story for thirty-three years from the time, upon the con-
dition that said church would pay their one-third part of
all moneys expended by said lodge in repairs to said build-
ing; and whereas, the said church hath hitherto failed to
pay their *pro rata* share for such repairs, but are now will-
ing and ready to do so; and whereas said lodge hath never
executed said lease in accordance with said agreement;
now therefore, the said party of the first part doth by these
presents let, grant, give, lease and convey for a term of
thirty-three years from this date, to the said trustees of
the Presbyterian Church of Fayette, and to their suc-
cessors in office, the use, occupation and enjoyment of
the lower story of the Masonic Hall Building, the same
now occupied by them for religious purposes; reserving,
however, the right of way of said lodge through the main
entrance to said hall to their masonic hall in the second
story; provided also, that if said premises should cease
to be used by the said church for religious purposes and
none other, then it reverts to said lodge.    Upon this ex-
press condition that said church shall pay two hundred
dollars in cash and give a note for one hundred and twenty-
six ($126) dollars payable on the first of November, A. D.
1876, being the amount now due and owing by said church
to said lodge for money paid out by said lodge for repairs
heretofore put upon said Masonic Hall Building; and
upon the further condition that the said Presbyterian
Church shall, from time to time pay or cause to be paid
one-third of all sums of money expended by said lodge in
repairs to said building, or that may be jointly made by

said parties; provided also that should said church fail to pay the same when called upon so to do, this lease shall cease and determine, and said church doth hereby covenant to give up possession of said leased premises to said lodge. It is further agreed by said lodge that if said church faithfully complies with the terms and conditions of this lease that then, at its expiration, it may be renewed at the will and pleasure of said lodge for such period of time as the lodge then in existence shall determine. In witness whereof, the said lodge by its W. Master, Warden and Secretary doth hereto set their hand and seals and the seals of said lodge."

After the execution of this lease no question seems to have arisen relative to the right of appellee to the use of this lower story, or the terms upon which it was using it, until some time in December, 1908, when appellant appointed a committee to notify appellee that its lease would soon expire. Several communications passed between the parties relative to this matter, which resulted in appellant offering to execute a new lease for ten years at an annual rental; the church (appellee) to keep in repair the interior of the room and the windows thereof, and "the lodge to keep in repair all outside, including the vestibule." This annual rental seems at first to have been fixed by the lodge at seventy-five dollars, then at sixty dollars, and finally at thirty-six dollars. These offers appellee declined to accept, but stated in writing that it would accept a renewal of the lease for a term of ten years on the same terms as the former one; that is, that it pay one-third of all repairs on the building. This offer was by the lodge declined, and this deplorable litigation was then begun.

Appellee's first contention is that it is the owner of a one-third interest in the building, and that it is entitled to the sale thereof for partition. This contention, however, seems not to be seriously pressed, and is obviously without merit. Its next contention is that it has the right

to the perpetual use of the lower story conditioned only upon the payment by it of one-third of all necessary repairs made on the building.   This contention is based upon what appellant says is the effect of the letter written to the lodge by the pastor of Ebenezer Church, and the lodge's response thereto.   Obviously this letter and resolution did not confer any right upon appellee to the use of the property.   They both contemplated further action by the committees appointed, and the record is wholly silent as to whether any such action was ever taken, except the recital relative thereto contained in the lease executed by the appellant to appellee in 1876.   We will not take up the recital of this lease into consideration in this connection, however, since appellee claims that it could not, even if accepted by its committee, have the effect of divesting it of whatever title or right it then had to the property.

But it is said that the resolution adopted by the lodge on September 30, 1854, did amount to a dedication of the lower story to the perpetual use of appellee as a place of worship.   The particular recital of this resolution upon which this contention is based is as follows: "The basement story to be built by and known as the Presbyterian Church."   This recital is wholly insufficient to constitute a dedication of this lower story to the perpetual use of appellee for a place of worship.   When read in its entirety, it is clear that the purpose for which this resolution was adopted was to appropriate all of the brick owned by the lodge to the erection of the building, and to provide that, in event there was not enough of these brick "for the completion of the entire building," the church was to pay for the additional brick needed.   The terms upon which appellee was to use the building are not dealt with in the resolution at all.   While no particular form of words is necessary in order to dedicate property to a particular use, it is necessary that the words should clearly and unequivocally manifest an intention to dedicate the property to the particular use.

Appellee's next contention is that it is entitled to a perpetual renewal of the lease executed to it by appellant upon January 1, 1876. This contention also seems not to be seriously pressed, and it is also so obviously without merit that we will pass to the next, which is that appellee is entitled to a renewal of this lease for another period of thirty-three years. The particular clause of the lease under which appellee claims the right of renewal is that which provides that: "It is further agreed by said lodge that if said church faithfully complies with the terms and conditions of this lease that then, at its expiration, it may be renewed at the will and pleasure of said lodge for such period of time as the lodge then in existence shall determine." This clause of the lease confers no substantial right upon either party, and really amounts to an absurdity.

Construed, as it must be, most strongly against appellant, the maker thereof, it can mean nothing more than that, at the expiration of the lease, it could be renewed, but only upon such terms and for such length of time as the lodge as then constituted might determine.

But it is said that appellee was permitted to hold over after the expiration of the lease from which "one of two consequences followed: Either the lease was renewed for a term of thirty-three years, or a new term was begun, the expiration of which was to be fixed by the lodge." A complete answer to this contention is that, during all of the time appellee was holding over after the expiration of its lease, prior to the beginning of this litigation, negotiations looking to a renewal of the lease were in progress, and nothing occurred during these negotiations from which it could be inferred that appellant recognized appellee as its tenant for a new term, and must therefore be estopped from disputing the formation of a new tenancy. Moreover, appellee's holding over was with the express consent of the lodge, for by resolution entered on its minutes on December 31, 1908, "the church was granted the use of the church until the lease could be made."

Again, it is said that, if appellee is mistaken in this, it is entitled to a renewal of the lease for a period of ten years from January 1, 1909, upon the same terms as the original lease. In support of this contention, the argument of counsel upon this point is as follows: "If, however, the court should hold that even under the law cited in the preceding section of this brief, and the facts disclosed by the record with reference to the renewal of the understanding between the church and lodge, the church is not entitled to a renewal for another full term of thirty-three years, then we respectfully submit that, by the action of the lodge, it is estopped to deny that the church was entitled to a renewal of the lease for a term of ten years from January 1, 1909, and that the chancellor erred in deciding to the contrary. The document in this record denominated a lease provides, as we have already shown, that, 'if said church faithfully complies with the terms and conditions of this lease, then at its expiration it may be renewed at the will and pleasure of the lodge for such a period of time as the lodge then in existence shall determine.' As written, this document imposed no necessity upon the church to take any action to notify the lodge of its desire for a renewal of the lease. As written (though we submit by clerical misprision), the church had no rights at the expiration of the term set out in the document, but the renewal was dependent solely upon the will and pleasure of the lodge, so that, as written, this document gave the lodge the power, should it so desire, to absolutely terminate the occupancy of the church on the 1st day of January, 1909. This option was vested in the lodge to be exercised or not, according to the terms of the document, at its own uncontrolled 'will and pleasure.' However, the lodge did not choose to exercise the option of terminating the occupancy of the church, or of attempting to do so. On the contrary, by resolution adopted on the last day of the term, it granted free use of the building to the church until a new lease could be

drawn. Thus the lodge waived its option to terminate
the lease by granting the church the privilege of continu-
ing its occupancy after the termination of the term. The
effect of this, we submit, was to renew the lease for at
least some period. After having consented to the con-
tnuance of the occupancy of the church, the only other
option vested in the lodge under the document in ques-
tion was that of specifying the 'period of time' of the re-
newal of the lease. This period of time was to be determ-
ined by the decision of the lodge in existence on January
1, 1909, The records of the lodge, as developed by the
testimony of the witness McBride, show that on June 3,
1909, the lodge, through C. H. Jenks, reported orally to
the session of the church that 'the lodge would lease to
the Presbyterian congregation the lower story of the
Masonic Building for a period of ten years for the sum
of sixty dollars per annum.' This action of the lodge,
we submit, was a fixation by the lodge that its decision was
that the 'period of time' for which the new term should
be was ten years. Having agreed, therefore, prior to the
expiration of the term, that the church should continue
in possession, and having five months thereafter notified
the church, which was still in possession, that it would
renew the lease for a 'period of time' of ten years, the
lodge could then affix different terms and conditions to
the renewal than those embodied in the original lease.
We submit that it could not. Especially in view of the
fact that, while the church refused to pay the tribute
demanded in the form of moneyed rent, it nevertheless
acquiesced in and consented to the fixation of time at
ten years. In the same notice sent by the church refus-
ing the demand for a moneyed rent, the statement is
made: 'That the congregation accepts the terms of years
upon condition and terms as set out in the original lease;
that is, that the Presbyterian congregation will accept
a lease for ten years from the lodge, and will agree to pay
one-third of the repairs made upon the building under the

same conditions as are expressed in the original lease.'
We submit, therefore, that here was a 'meeting of the
minds' of the contracting parties, and consummated
finally a new lease for a term of ten years.'" In this coun-
sel are in error. No rights of the lodge were waived by
its consenting for the church to remain in possession of
the property pending a settlement of the controversy;
and, in order for a contract to be consummated by the ac-
ceptance of an offer, this acceptance must in every respect
meet and correspond with the offer. The court committed
no error in holding that the church had no interest in the
property, nor right to its perpetual use, or to the renew-
ing of the lease.

The lodge complains, however, of the action of the
court below in charging it with the payment of two-
thirds of the money alleged to have been expended by
the church in repairing the lower story in 1899. The bill
alleged "that said church has not only paid its just pro-
portion of the repairs which were desired and which were
in fact necessary to said building, but in addition thereto
has, with the knowledge and acquiescence and consent
of said defendant, expended other large sums of money
upon said building of which no part has been paid by the
defendant," and then proceeds to state what these ex-
penditures were. The decree recites that this allegation
was not denied by the answer, and then proceeds to ap-
point a commissioner to state an account of all money
so expended by appellee, and to report the same at the
next term of the court. The answer attempts to deny
this allegation in terms of the bill as follows: "Defendant
denies that complainant has not only paid its just pro-
portion of the repairs which were desired and which were
in fact necessary," etc.—continuing in the exact language
of the allegation of the bill. It may be, as counsel argue,
that this denial is couched in such language as to imply
an affirmation of the allegation attempted to be denied.
It does contain one, and probably two, negatives pregnant.

To deny "that said church has *not* only paid its just proportion of the repairs which were desired," by the use of the two negatives, of course affirms that the church has paid its just proportion of the repairs; and it may be that, to deny "that said church in addition thereto has, with the knowledge, acquiescence, and consent of said defendant, expended other large sums of money upon said building, of which *no* part has been paid by the defendant," admits that such expenditures have been made upon the building with the knowledge, acquiescence, and consent of said defendant, and that only a part thereof has been paid. To deny that *no* part of these expenditures has been paid may imply that a part, though not all thereof, has been paid. As to this, however, we will express no opinion, for the reason that it is wholly immaterial whether this allegation of the bill was denied or not.

It simply alleges mere consent on the part of the lodge that the church might make the repairs, and mere consent on the part of a landlord that a tenant may make repairs imposes no obligation upon him to reimburse the tenant therefor. In order that consent for the tenant to make repairs may impose such an obligation upon the landlord, the consent must be given under such circumstances as to imply a promise to reimburse the tenant therefor.

The evidence in support of this allegation of the bill is that in 1899 the church put new windows in the lower story and made considerable changes in and repairs to the interior thereof, some of which changes and repairs added materially to the strength of the building. It is not shown that these repairs were necessary except for the special purpose of the church, and they were not made by the lodge and church jointly as provided by the contract, but by the church alone without consulting the lodge. The church did ask the lodge for a contribution to this work, and the lodge responded by contributing

ninety dollars thereto.    This fact of itself seems to indicate that neither party considered the lodge liable to the church for two-thirds of the amount to be expended by it in making these repairs.    But it is said, in effect, that the lodge, by permitting the church to make these repairs without objecting thereto, impliedly agreed to pay its proportion of the cost thereof.    The lodge was not called upon to object; and moreover, as hereinbefore stated, express consent, without more, to the making of the repairs by the church would have imposed no obligation upon the lodge to contribute to the expense thereof.    The general rule is that, in the absence of a special agreement, the landlord is not liable to his tenant for repairs made by the latter to the leased premises, and, where there is such an agreement, the repairs must of course be of the character and made under the circumstances contemplated by the agreement.    Under the terms of the lease, the only special agreement here shown, the lodge was to contribute to the expense of the repairs made by it, or made "jointly by said parties," and there is no pretense that the repairs in question were made by the lodge or jointly by said parties.    What the rights of the church in this respect might have been had the lodge declined to contribute to an expense necessary to be incurred in order to keep the building in the same state of repair that it was when the lease was executed is not here involved, for the repairs in question were not of that character.

Again it is said that the money to pay for these repairs was expended by the church under the belief, mistaken though it may have been, that it owned the property, and therefore the lodge ought not now to be permitted to retain the property without reimbursing the church for the money so expended.    A sufficient answer to this contention is that it does not appear that the lodge was aware that the church claimed the property, and was making such repairs by reason of this belief.    The question of ownership, or the right by which the church used the prop-

erty, seems not to have arisen, and no discussion thereof was called for. The chancellor therefore erred in holding that the lodge was liable to reimburse the church to the extent of two-thirds of the money expended by it for these repairs and improvements.

He also erred in holding that the lodge was not entitled to recover from the church a reasonable rental for the use of the lower story after notice to vacate was given by the lodge to the church on June 4, 1909. After the expiration of the lease, and until this notice was given, the church was in possession by permission of the lodge under such circumstances as would indicate that no rent would be charged. Therefore it ought not to recover rent for such time.

The decree of the court below will be reversed, and a final decree entered here denying appellee the relief prayed for, adjudging the title to the property to be in appellant, and awarding it the possession thereof, and the cause will be remanded to the court below, with instructions to ascertain and decree the amount of rent due the lodge after notice given by it to the church to vacate.

*Reversed and remanded.*

### ON SUGGESTION OF ERROR.

REED, J. In response to the suggestion of error, we have again carefully examined the evidence in this cause, and find that the statement of facts contained in our former opinion is correct.

The only other matter contained in this suggestion of error which we deem it necessary to reply to is the statement "that these errors," referring to statements of fact contained in the opinion, "were fallen into on account of the complicated condition of the record, and by reason of the fact that the bench of the supreme court as now constituted had never heard the case argued before it. In conformity with the custom heretofore prevailing with

the supreme court, we had rested, under the opinion that the case would, on the court's own motion, have been remanded to the docket for further oral argument upon the change in the personnel of the supreme court. This course had been adopted by the court upon the appointment of Judge W. C. McLEAN to the bench, and we were of the opinion that the rule then in force would obtain now. Therefore, in filing this suggestion of error, we respectfully urge upon the supreme court to grant at least the poor privilege of again presenting our views to a full bench orally, as is permitted by the statute in this regard."

Counsel are in error in stating that the custom of this court has been, upon a change in the personnel thereof, to, of its own motion, remand cases to the docket which have been theretofore orally argued. The uniform custom has been to remand such cases to the docket upon a change in the personnel of the bench, not upon the court's own motion, but only when a remand thereof was requested by counsel. When Judge W. C. McLEAN became a member of this court, instead of remanding to the docket on its own motion the cases which had been theretofore argued orally the court entered the following order, which will be found in Book Q, at page 181: "In view of the fact that there has been a change in the personnel of the court since its adjournment, the clerk is directed to notify the bar that all cases now in the consultation room, wherein oral argument was originally made, may be remanded to the docket and reargued to the full bench, provided application is made for the purpose before the expiration of ten days from the date of this order, and the clerk is directed to give notice to this effect through the newspaper." The making of this order was, of course, unnecessary, and such an order was not made in each of the instances where a change has been made in the personnel of the bench. No such order was made when Judge COOK and the writer hereof became members

of the court, but in both instances publication was made
notifying the bar that causes which had been heretofore
orally argued would be remanded to the docket on mo-
tion, and in both instances causes were remanded upon
request of counsel.

This case was orally argued on January 17, 1912, since
which time there have been two changes in the personnel
of this bench, once on May 10, 1912, and again in August
following, and no intimation was received from counsel
that a. remand to the docket for reargument was desired
until the filing of this suggestion of error.

*Overruled.*