CONNOLLY *v.* MCLEOD.

Division A. May 21, 1951.

No. 37987 (52 So. (2d) 473)

Motion to Amend Judgment Sustained Oct. 1, 1951.

Quitman Ross and E. P. Connolly, for appellant.

Collins & Collins, for appellee:

**Kyle, J.**

The appellee, James H. McLeod, filed suit in the chancery court of the Second Judicial District of Jones County against the appellant, Mrs. P. J. Connolly, Sr., and Peter Joe Connolly, Jr., and C. E. Biglane to recover a judgment against Peter Joe Connolly, Jr., and to affix a lien upon a building erected by the appellee and Peter Joe Connolly, Jr., on a lot owned by Mrs. P. J. Connolly, Sr., and the fixtures and furnishings located in said building, for the payment of said judgment, and to recover the rentals being paid by C. E. Biglane to Mrs. P. J. Connolly, Sr., for the use of said property.

The record shows that Mrs. P. J. Connolly, Sr., the mother of Peter Joe Connolly, Jr., was the owner of the Edwin Hotel property situated at the corner of Central Avenue and Maple Street in the City of Laurel, and attached to the hotel property and constituting a part of same was a vacant lot. The appellee and Peter Joe Connolly, Jr., had been boyhood friends and had been closely associated with each other for many years, and during the spring of 1948, with the knowledge and consent of Mrs. P. J. Connolly, Sr., the appellee and Peter Joe Connolly, Jr., entered into a partnership agreement for the erection of a building and the operation of a restaurant on the above mentioned vacant lot owned by Mrs. P. J. Connolly, Sr., and adjoining the Edwin Hotel property. Mrs. P. J. Connolly, Sr., operated the Edwin Hotel, and both she and her husband knew and fully understood the plans and intentions of the boys in erecting the restaurant building on Mrs. Connolly's vacant lot. Neither of the boys had a sufficient amount of money to defray his part of the cost of the construction of the building and the purchase of equipment therefor. But the appellee procured his part of the money, and the

father of Peter Joe Connolly, Jr., advanced to Peter Joe sufficient funds to enable him to pay his part of the cost of the building.

The appellee alleged in his bill of complaint that Mrs. Connolly agreed to the erection of the building; and that it was understood that he and Peter Joe were to erect the building at their own expense and have the use of the building for the operation of a restaurant for a period of five years without the payment of rent. Pursuant to the plan thus agreed to, the appellee and Peter Joe during the early summer erected a concrete block building on the southwest corner of the Edwin Hotel . lot, which, as stated above, was owned by Mrs. Connolly. The material purchased and used in the erection of the building cost approximately $2,500. The appellee and Peter Joe constructed the building themselves. All necessary plumbing fixtures, and all necessary electrical and gas fixtures and equipment were installed, and in addition thereto proper restaurant furnishings and equipment were purchased and installed. The record is not clear as to the exact amount of money the boys actually invested in the property, but in addition to the $2,500 invested in the building, it is reasonably certain that approximately $5,000 went into the plumbing, gas and electric fixtures and equipment, and restaurant furnishings and equipment.

The boys operated the restaurant business under the trade name of ''P & T Grill'' for a period of approximately 11 months. On June 15, 1949, the partnership was dissolved by mutual agreement, and the appellee accepted a job in Texas. Peter Joe continued to operate the restaurant business until September, 1949. But the labor strike at the Masonite Plant in Laurel had affected business generally in the City of Laurel, and the restaurant business in particular, and after the first of September Peter Joe closed the doors of the restaurant and ceased to operate the business.

The appellee in his bill of complaint stated that, when the appellee decided to withdraw from the business in June, 1949, Peter Joe Connolly, Jr., agreed to purchase the appellee's interest in the business for the sum of $3,600, to be paid in installments of $50 per month until the full amount of the purchase price had been paid. No part of the purchase price was paid. After Peter Joe Connolly, Jr., had closed the doors of the restaurant in September, Mrs. P. J. Connolly, Sr., called the appellee over long distance telephone and advised him of that fact and requested that he return to Laurel and take over the operation of the restaurant. The appellee returned to Laurel about two weeks thereafter, and an effort was made to rent the building and equipment for restaurant purposes, but a tenant could not be found at that time. Sometime thereafter Mrs. P. J. Connolly, Sr., leased the building and equipment to C. E. Biglane for the sum of $125 per month, and Biglane thereupon resumed the operation of the business under the trade name of the "P & T Grill." Biglane was occupying the restaurant building and had possession of the furniture, fixtures and equipment used in connection therewith at the time the bill of complaint was filed. The rental contract under which he was operating was a written contract signed by Mrs. P. J. Connolly, Sr., and Biglane paid the rent each month directly to her.

The defendants in their answer denied that there was ever any agreement between the partners and Mrs. P. J. Connolly, Sr., for the construction of the building on the lot owned by Mrs. P. J. Connolly, Sr., or any agreement whatever as to the duration of time the building might be used by the partners; and the defendants alleged in their answer that if any such agreement had been made it would have been void, if not in writing, because of the statute of frauds. Mrs. Connolly admitted, however, in her answer, that she gave implied consent to the construction of the building in that she was aware of the construction and made no objection thereto. The

defendants denied that Peter Joe Connolly, Jr., had agreed to purchase the interest of the appellee in the property for the sum of $3,600, or for any other amount. Mrs. Connolly admitted that she had leased the building and equipment to Biglane, and that she had never asked authority to do so from the appellee for the reason that he had no interest in the property and that it was not necessary to have his authority or consent. Biglane admitted that he was in possession of the property as lessee and that he was paying the sum of $125 per month as rent. Mrs. Connolly in her answer and in her testimony denied that the appellee had any interest in the property.

The chancellor, after hearing the testimony, found that there was no express agreement between Mrs. Connolly on the one hand and her son and the appellee on the other with reference to the construction of the building on her property, but that Mrs. Connolly knew of the plans of her son and the appellee to construct the building; and that she knew that it was their intention to operate a restaurant therein. The chancellor found that Mrs. Connolly's hotel was situated within a few feet of the restaurant building, and that she could watch its construction from day to day and that she knew all that was being done; that she permitted the appellee and her son to construct the building on her land without objection; and that she thereby consented to the construction of the building.

Upon the basis of the foregoing findings of fact, the chancellor held that the restaurant property retained its character as personal property, and that the appellee was the owner of an undivided one-half interest therein irrespective of its cost or present value. The chancellor found that there had been no sale by the appellee of his undivided one-half interest in the property to Peter Joe Connolly, Jr., and that the appellee was not entitled to a decree against the Connollys for $3,600.00, and that there was no lien on the property in favor of the appellee

for that amount. The chancellor held, however, that the appellee was entitled under the prayer for general relief contained in his bill of complaint to one-half of the rentals collected and to be collected from the property, and the chancellor entered a decree in favor of the appellee against Mrs. P. J. Connolly, Sr., and Biglane for the sum of $425, being one-half of the rentals paid up to April 15, 1950. The chancellor also decreed that the restaurant building and the fixtures therein were the property of Peter Joe Connolly, Jr., and James H. McLeod.

The appellant, in her assignment of errors and in her brief, contends that the court erred in not holding that appellee's claim to the property, or an undivided one-half interest therein, was void under the statute of frauds, Section 264, par. (c, d), Code of 1942, and that the court erred in holding that the appellee and Peter Joe Connolly, Jr., in erecting the building on the appellant's land were licensees, and that the building remained the property of the appellee and Peter Joe.

In 22 Am. Jur. p. 780, par. 64, the rule applicable to the erection of buildings on the land of another by his license or consent is stated as follows: ██ "Generally a building erected on the land of another by his consent or license does not become part of the realty, but remains the property of the person annexing it. The same results will be achieved if the owner expressly consents or agrees that the building shall remain personalty; and an agreement of this nature may be oral and is not within the statute of frauds, since the agreement involves no sale of an interest in land. * * * This rule certainly holds when there is an express reservation of a right to remove the building; and ██ generally it is considered that where the landowner consents to the placing of a building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personalty, an agreement will be implied that such building is to continue personal property, in the

absence of any other facts or circumstances tending to show a different intention. In some jurisdictions it appears that such an agreement will be implied despite the fact the realty is sold to a bona fide purchaser without notice of the rights of the builder. Where such an agreement is implied, it is immaterial what is the purpose, size, material, or mode of construction of the building;''.

In the case of Waldauer v. Parks, 141 Miss. 617, 106 So. 881, 882, in discussing the right of a tenant to remove buildings and other fixtures erected on the land by the tenant for trade purposes, this Court said:

''The general rule is that whatever is affixed to the land thereby becomes a part of the realty to which it adheres and becomes a part of the freehold and partakes of all of its incidents and properties. To this general rule, however, there are exceptions and qualifications. The greatest relaxation of it is in favor of the tenant who has erected structures on the land during his tenancy. The general rule is applied with strictness as between heir and executor, mortgagor and mortgagee, and vendor and vendee, but with much leniency as between landlord and tenant. Stillman v. Hamer, 7 How. 421; Terry v. Robins, 5 Smedes & M. 291; Richardson v. Borden, 42 Miss. 71, 2 Am. Rep. 595; Weathersby v. Sleeper, 42 Miss. 732; McMath v. Levy, 74 Miss. 451, 21 So. 9, 523; Van Ness v. Pacard, 2 Pet. 137, 7 L. Ed. 374; Harkness v. Sears, 26 Ala. 493, 62 Am. Dec. 742.

''The Van Ness Case is one of the leading cases in this country on this question. The opinion of the Supreme Court in that case was written by Justice Story. It is a very able and exhaustive discussion of the doctrine as applies between landlord and tenant. The building which the tenant claimed the right to remove in that case was a dwelling house erected on the leased land attached to the freehold. The question, therefor, was what fixtures erected by a tenant during his term are removable by him? The court held that the question whether the dwelling house there involved was erected by the tenant

for the purposes of trade and removable or not, did not depend upon the form or size of the building, nor whether it had a brick foundation or not,. nor whether the building was of one story or two stories that the sole question was whether it was designed for the purposes of the tenant alone, that is, the purposes of trade; that if the residence constructed by the tenant was merely an accessory for the more beneficial exercise of the business of the tenant and with a view to superior accommodations in that particular, then it did not become a part of the freehold and was removable by the tenant.''

In the case of Workman v. Henrie, 71 Utah 400, 266 P. 1033, 1035, 58 A. L. R. 1346, the court said: ''The rule seems to be well settled that, in case of buildings or other improvements erected on another's land, if built with the consent of the landowner that they should remain the personal property of the builder, the agreement may be oral, for in such case the character of the building as personalty is fixed before attachment to the realty, and the agreement involves no sale of an interest in the land. 25 R. C. L. 539. Such a contract or agreement is not within the statute of frauds. 27 C. J. 195. Under such circumstances, the building remains the property of the person annexing it, and may be removed by him. 11 R. C. L. 1083.''

In the case of King v. Morris, 74 N. J. L. 810, 68 A. 162, 163, 14 L. R. A., N. S. 439, the court said ''Paschall was not a tenant; but it conclusively appears that he entered, erected and maintained this factory by the permission of Mrs. Morris. The query is presented whether as a licensee of Mrs. Morris the presumption would arise, without proof of any agreement, that a right to remove the factory existed, and so the factory retained its character of personalty. The doctrine that a structure, however costly, if placed upon the land of another by permission, which permission may be recalled at any time, becomes in the absence of specific agreement irrevocably attached to the land upon which it is placed, is manifestly opposed

to the intention implied in the very transaction. The inference springing out of such a license is that the land used is to be left as found, and the property so placed thereon shall remain the property of the user and be removable as such. This was the view entertained by Mr. Justice Dixon in the case of Pope v. Skinkle, 45 N. J. Law 39. The rule is supported by an abundance of authority elsewhere. Howard v. Fessenden, 14 Allen (Mass.) 124; Wells v. Banister, 4 Mass. 514; Dubois v. Kelley, 10 Barb. (N.Y.) 496; Curtiss v. Hoyt, 19 Conn. 154, 48 Am. Dec. 149; Fischer v. Johnson, 106 Iowa 181, 76 N. W. 658; Brown v. Baldwin, 121 Mo. 126, 25 S. W. 863; Peaks v. Hutchinson, 96 Me. 530, 53 A. 38, 59 L. R. A. 279; Northwestern Mut. L. Ins. Co. v. George, 77 Minn. 319, 79 N. W. 1028, 1064.''

In support of his contention that the appellee's claim to an interest in the building and fixtures is void because of the statute of frauds the appellant cites the case of Tanner v. Walsh, 184 Miss. 147, 183 So. 278. In that case the owner of the land was seeking to recover possession of a house and lot from a tenant who was undertaking to retain possession under an alleged three-year verbal lease, and the Court held that an oral agreement by the landlord to rent the property to the tenant for three years at a monthly rental of $60 came within the statute of frauds, and the fact that the tenant had spent large sums of money for trade fixtures, including a refrigerating plant, installed upon the leased premises did not authorize the Court to engraft exceptions on the statute of frauds. We think that the Tanner case has no applicaion to the facts presented in the case that we now have before us.

The appellant also claims that the court below erred in ignoring the case made by the pleadings, and in granting the relief provides for in the final decree. But this claim, we think, is also without merit. The facts relating to the construction of the building by the appellee and Peter Joe Connolly, Jr., on the land owned by the appel-

lant and with her consent, as set forth in the bill of complaint, were substantially proved in the trial of the case before the chancellor. It is true that the appellee claimed in his bill that Peter Joe Connolly, Jr., had agreed to purchase appellee's interest in the property at the time the appellee acceted a job in Texas, and that the appellee in his bill sought to enforce a lien upon the building and the rents derived therefrom, to secure the payment of the purchase price, and that the chancellor found that the alleged sale had not been consummated, and that the appellee accepted a job in Texas, and that the appellee for in his bill. Yet, although the appellee was not entitled to the specific relief prayed for, under the facts disclosed by the record, the appellee was entitled to the relief which the court granted in its decree. ██ The appellee was entitled to have his rights in the property definitely determined and established by a proper decree of the court and to have awarded to him one-half of the rents which had been collected by Mrs. Connolly from the tenant who was occupying the building and making use of the equipment which belonged to the appellee and Peter Joe. And we think that ██ the relief granted by the court in its decree was consistent with the bill of complaint and within its scope and was justified under the prayer for general relief. Griffith's Mississippi Chancery Practice, (2d) Ed. par. 186 and par. 187.

The decree of the lower court will therefore be affirmed, and the cause remanded to the lower court for such further proceedings as may be necessary and proper to enable the appellee and Peter Joe Connolly, Jr., as the owners of said building, fixtures and equipment to remove the same from the lot owned by the appellant, or so make such other disposition of the building, fixtures and equipment as they may deem best or as the court may direct.

Affirmed and remanded.

After the delivery of the foregoing opinion and the entry of decree, appellee filed a motion to correct the

decree as entered on the minutes by the Clerk of the Supreme Court, and on Oct. 1, 1951, the Court, without a written opinion, made the following order: "Appellee's motion to amend judgment sustained and Clerk is ordered to amend judgment entered by the Court in this cause on May 21, 1951, so as to include in the judgment against appellant and the sureties on her appeal bond, a judgment in favor of appellee for the $425.00 for which decree was entered in the lower court together with interest, damages and costs as prayed for in the motion".