Howie, et al. *v*. Baker

No. 40649 February 3, 1958 100 So. 2d 113

*Fulton Thompson, R. H. & J. H. Thompson,* Jackson, for appellants.

*McLendon & McLendon,* Jackson, for appellee.

Lee, J.

This litigation originated in this way: On January 14, 1939, Lucille Baker, a Negro woman, a servant of E. W. Barrett, was living in one of his houses at 412 N. Gallatin Street, in the City of Jackson. On that date he

made, published and declared his last will and testament. The will bequeathed to her a life estate in the above described property, directed that the taxes thereon should be paid by his estate, and created a trust fund from which she was to be paid $10 per month during her lifetime. The residue of his property, except for four other devises, was bequeathed to Mrs. Willie Howard Osborne.

On January 20, 1939, by warranty deed, Barrett conveyed to Mrs. Osborne all his property, including the above described lot, but reserved unto himself a life estate therein. In early September of that year, he died. Lucille continued thereafter to occupy the house, paid neither rent nor taxes, and received $10 per month from the estate of Barrett.

On January 23, 1952, Mrs. Osborne, by warranty deed, conveyed this and other property to Homer Lee Howie and Dexter S. Freeman. At this point, trouble began. When Mrs. Osborne and Howie, following the sale, informed Lucille thereof and that she would be required to pay rent, she refused to do so and claimed that the property belonged to her.

As a result of this impasse, Howie and his associates filed an eviction suit in the County Court of Hinds County, and obtained a judgment for possession of the property. The sheriff was about to execute the process, when Lucille, by her attorney, filed a bill in the Chancery Court and obtained the issuance of a temporary injunction, enjoining the sheriff from executing the process. A motion to dissolve was overruled, but the bond was increased to $500. Lucille did not furnish the required bond, and, on the second hearing, the temporary injunction was dissolved. Damages were fixed at $100, and the sheriff was directed to execute the process.

On January 22, 1953, as a result of a conversation with Howie, who was a lawyer, Lucille, without the advice of her attorney, signed a quitclaim deed to the property and a motion for the dismissal of her suit with prejudice. On the same date an order of dismissal was entered.

On February 20, 1953, Lucille Baker, appearing by her same counsel, filed a motion to set aside the order of dismissal and to reinstate the cause and the injunction. It was charged that she was overreached and was the victim of fraud in her execution of both the motion to dismiss and the quitclaim deed to the property without consultation or advice from her acting attorney.

The answer of the defendants was a denial in detail of all of the material allegations of the motion, and was made a cross bill for the award of relief therein prayed for.

At this juncture, different counsel on both sides came into the litigation and have handled it ever since.

Without detailing the evidence, the court on that hearing held that no undue influence on the part of Howie was shown, nor was any fraud practiced by him, although it might have been an impropriety for him to state to Lucille Baker that, in his opinion, she did not have a good cause of action, and that the best thing would be for her to dismiss the lawsuit, rent the property, and forget about her interest therein. But, because of the intoxicated condition of her previous counsel when the original bill of complaint was filed and the hearings were being held thereon, and at the time of the presentation of the motion to set aside the order of dismissal, the court was of the opinion that Lucille Baker did not have proper representation; and in order that there might be no doubt that she has had her day in court, the motion to set aside the decree of dismissal was sustained.

Thereupon, by leave of the court, an amended and supplemental bill was filed by her present counsel. It alleged that Mrs. Osborne, after the funeral, had informed Lucille that Mr. Barrett willed the property to her as a home for the rest of her life, without payment of rent and that the taxes would be paid by his estate; that Lucille later obtained a copy of the will and from it believed that the property had been willed to her; that she

had lived on the property for the past sixteen years, had made repairs and improvements, and had paid for the maintenance and upkeep thereof; that Mrs. Osborne had known that she was claiming the property, and had not sought to collect rent; that when Mrs. Osborne and Homer Lee Howie came to her home in 1952 and informed her of the sale and that she would have to pay rent, she then and there informed them that the property belonged to her and she would pay no rent; and that subsequently, when she actually paid rent, she did so only for the purpose of preventing her dispossession. She prayed that she might be declared the owner, for the recovery of rents paid, and other relief, together with a prayer for general relief.

The answer of the defendants denied in detail all of the material allegations of the amended bill.

At the conclusion of the evidence, the court made an extensive finding of fact and denied all relief prayed for, except for capital improvements of the property, which, the court held, had enhanced the value thereof in the sum of $600; and for that purpose, a lien was imposed. The decree was in accordance with the finding of fact; and the defendants appealed.

The appellants contend here that the trial court erred in setting aside its former decree, and in making an award for improvements.

■■ ■ The reinstatement at the same term of court of a dismissed cause must be left, in large measure, to the discretion of the court. ■■■ Matters of which the court may be aware, because of their observation during the trial, may not be reflected in the evidence, and yet they may constitute a compelling reason for the award of a new hearing. The chancellor, in his finding of fact, mentioned such a situation. Griffith's Mississippi Chancery Practice, 1950 Ed., par. 632, deals with the question as to when and whether decrees shall be vacated, and finally at page 691 thereof, states as follows: ''It is a

matter that, at last, must necessarily be left largely to the sound judicial discretion of the chancellor, wherein on the one hand he will seek to administer full justice in the individual case and on the other to enforce the observance by the parties of a reasonable freedom from inexcusable negligence and to uphold the requirements of the public interest in a prompt, efficient and orderly administration of justice." See also Benwood Iron-Works Co. v. Tappan, 56 Miss. 659. Under the facts here, it was not error to set aside the order of dismissal and reinstate the cause.

Appellants say that the Baker woman was a tenant at sufferance of Mrs. Osborne, and that, under the general rule, namely, that "in the absence of a special agreement, the landlord is not liable to his tenant for repairs made by the latter to the leased premises", the court was without authority to grant her a decree for improvements. Among their citations are Thomas Hinds Lodge No. 58, F. & A. M. v. Presbyterian Church, 103 Miss. 130, 60 So. 66; Williams v. Barlow, 205 Miss. 449, 38 So. 2d 914; Miller v. Miller, 217 Miss. 650, 64 So. 2d 739; 51 C. J. S., Landlord and Tenant, Sec. 399a, pages 1141-2.

In Waldauer v. Parks, 141 Miss. 617, 106 So. 881, it was pointed out that *"The greatest relaxation of it (general rule) is in favor of the tenant who has erected structures on the land during his tenancy.* The general rule is applied with strictness as between heir and executor, mortgagor and mortgagee, and vendor and vendee, *but with much leniency as between landlord and tenant"*, citing cases. (Emphasis supplied).

There is no dispute about the general rule. The question is whether, under the particular facts of this case, the general rule applies.

The effect of Lucille Baker's testimony was that Mrs. Osborne, about September 6, 1939, just after Mr. Barrett's funeral, came by the house where she was sick and represented to her that Mr. Barrett had willed the house

to her for life, provided for payment to her out of his estate of $10 per month as long as she lived, that the taxes would be paid by the estate, and that she could repair or fix anything that she wanted to, because the property was hers for life. Lucille also obtained a copy of the will and thought that it confirmed what Mrs. Osborne had said. Thereafter she lived in the house, and did not pay, during the whole period, taxes or rent. She made certain improvements, and, in 1948 or 1949, added a bathroom to the property. She produced bills which showed the aggregate of her outlay to be in excess of $1,100. Once or twice a week, Mrs. Osborne, on her rent collecting missions, before, during, and since the construction of the bathroom, passed by the property, should have seen the bathroom, but never at any time objected or said anything about it. When Mrs. Osborne and Mr. Howie came to her house on January 23, 1952, and told her of their sale and purchase, and she, in turn, reminded Mrs. Osborne of her previous representations, the latter replied that she had a deed and that it covered the will.

Mrs. Osborne, while admitting the visit to Lucille shortly after Mr. Barrett's death, denied that she made the representations as testified to by Lucille; but instead said that she told Lucille that she owned the property and had a deed to it, but that she was going to let her live there without paying rent as long as she, Mrs. Osborne, owned the property. She denied that she mentioned the will. She also denied that Lucille made the improvements or added the bathroom. On the contrary, she said that she herself built the bathroom, although she could not tell when. She also admitted that she walked along the alley, adjacent to the bathroom, at least once a week, collecting rent from 1939 until she sold the property. She said that she is a college graduate and that she had seen and read the Barrett will, but did not understand from it that Lucille was to have a life estate in the property. She said that she went with Howie to Lucille's house that day as a mere matter of courtesy

and in order that Howie might meet the different tenants. She also said that she did not expect any trouble from Lucille and denied that she had told Howie that he was likely to have trouble with her.

Howie, in his evidence, admitted that he knew, before he went to Lucille's house, that she was claiming the property; that Mrs. Osborne had already told him that she had never collected any rent from Lucille and that he might have trouble with her. He conceded, both in his testimony and in his answer, that Lucille informed him at the time that the property belonged to her and that she would pay no rent thereon.

Thus it will be seen that the court, on this disputed issue of fact, was warranted in finding that Mrs. Osborne, at a time when she knew, or should have known, from the provisions of her deed that Barrett's life estate had expired, represented to Lucille that she had the right to live in the house, tax and rent free, for life, and repair or fix anything that she desired. For more than 12 years Lucille actually lived in the house and paid no rent or taxes. Moreover, the proof was almost conclusive that she made improvements and erected the bathroom. Mrs. Osborne denied this and claimed that she built the bathroom, but she could not say when, nor did she offer any corroborative evidence thereon. Besides at a time when she could, and evidently did, see the bathroom under construction, she offered no protests or objection thereto. The chancellor, in his finding of fact, expressly rejected certain phases of Mrs. Osborne's testimony as being untrue.

 One may not stand by and see improvements made under circumstances, which call for notice or protest, as the evidence justified in this case, and afterwards assert her title against such person. Brock v. Kelly, 208 Miss. 323, 44 So. 2d 452.

In Martin v. Hartley, 208 Miss. 112, 43 So. 2d 875, the Court refused to cancel a lease, alleged to have been deliberately altered by the lessee, on account of the fact

that the lessors had stood by without protest for a year and a half and permitted the lessee to use the property, and to make a large investment thereon as though he had the legal right to do so.

In Burton v. Redmond, 211 Miss. 158, 51 So. 2d 210, Dr. Redmond, as the result of what his grantor told him, enclosed more property than his deed actually called for. Besides he made an addition to his house, located on the west side of the creek, and it turned out that such addition was north of the platted line as surveyed, and was on the property of the appellants. But his proof showed that the appellants knew what he was doing and they did not object. As a matter of fact they did not claim the property until a survey was made about eight years later. It was contended that the trial court was in error in allowing a value for improvements because Dr. Redmond's claim was not under a deed, or contract of purchase, acquired or made in good faith as contemplated by Section 825, Code of 1942 Rec. But it was held that the trial judge was justified in concluding that Dr. Redmond was in good faith when he erected this addition and that the allowance for improvements was proper. It was also observed that since the appellants had stood by for eight years, estoppel could also play a part.

In Connolly v. McLeod, 212 Miss. 133, 52 So. 2d 473, Peter Joe Connolly, Jr., son of Mrs. P. J. Connolly, Sr., the owner of the lot, and James H. McLeod erected a building on Mrs. Connolly's lot without any express agreement with her. However she knew their plans and expectation to operate a restaurant therein. She could have seen the progress of the work from day to day, but she made no objection thereto. McLeod, after a time, sold his interest to Peter Joe, but was never paid therefor. In holding that McLeod still had a subsisting interest in the building the court cited 22 Am. Jur., Fixtures, page 780, to-wit: "Generally a building erected on the land of another by his consent or license does not become part of

the realty, but remains the property of the person annexing it.''

■■ If the chancellor had found Mrs. Osborne's version to be true, it might be said that the additions by Lucille were at her peril; but that version was rejected, and there was abundant evidence to sustain the court's action. Obviously the property was enhanced in value by reason of such improvements, and the court properly allowed a recovery for such benefit.

The appellants further say that the appellee did not ask for the relief which was granted. It is true that the trial court held that the appellee was not entitled to the specific relief for which she prayed. However, it was charged in the amended bill that improvements had been made. Besides there was a prayer for general relief. A similar situation obtained in Connolly v. McLeod, supra. It may be said here just as the opinion stated in that case, namely, ''the relief granted by the court in its decree was consistent with the bill of complaint and within its scope and was justified under the prayer for general relief'', citing Griffith's Mississippi Chancery Practice, 2d ed. Secs. 186-7.

From which it follows that there was no reversible error in the trial of this case, and the decree must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.