BROCK *v.* KELLY, et al.

In Banc.  Feb. 13, 1950.

No. 37260 (44 So. (2d) 452)

**Alfred A. Levingston** and **W. W. Simmons**, for appellant.

**Smith & Jones**, for appellees.

Levingston and **Simmons,** in reply.

**Roberds, J.**

When the bill in this cause was filed E. V. Brock, Jr., the complainant, was the owner of a lot in the City of Cleveland, Mississippi, fronting north 100 feet on the south side of South Court Street and extending south 150 feet. On this lot was located a commercial building, the west side of which was used as a grocery store and in the east side was operated a cafe. The east forty feet of the lot was paved and used by the patrons of the cafe as a parking space. At that time George W. Kelly, one if the respondents, was the owner of a lot adjoining the Brock lot and lying immediately east thereof. The Kelly lot faced north upon the south side of South Court Street 39.6 feet and extended south some 300 feet. On this lot was located a brick building in which was operated a launderette. The Mississippi Power & Light Company

owned an easement across the Kelly lot for the purpose of laying gas, and erecting power, lines. The Grenada Bank held a trust deed on the Kelly property to secure payment of the sum of $9,000.00. The Power Company and the Grenada Bank were made parties defendant to the bill.

The bill prayed for a decree cancelling and annulling all claimed rights of the respondents in the Kelly lot and for a mandatory injunction for removal of the brick building therefrom, and also enjoining respondents from any and all use or occupancy of the property. The Chancellor dismissed the bill and Brock appeals.

In his bill Brock took the position that the Kelly property was a part of Front Street and as an abutting property owner he had a special interest therein, with the right to have all obstructions removed therefrom, but, in case the street had been abandoned, that title to the Kelly property had reverted to him, that property consisting of approximately the west half of the supposed street. Respondents urged a number of defenses, one being that complainant is estopped to maintain the suit. Since we think the cause should be affirmed on that ground we do not deal with the many other questions so ably presented by counsel for both sides. The Chancellor did not make a finding of fact nor render an opinion, but, from the evidence, he could have found, and in the absence of disclosure of the grounds of his conclusion, we may assume he did find, the following facts, which have a bearing, to some extent, upon the question of estoppel:

The property composing what is claimed to be Front Street is all of the land lying between the east boundary of the Brock lot and Jones Bayou to the east thereof. On October 20, 1915, W. L. Pearman, who, theretofore had been the owner of the Brock lot and then claimed to be the owner of the Front Street property, executed a deed to the Front Street property to J. W. Davis. At that time the Brock property was owned by Mrs. Gordon, to whom Pearman had deeded it on November 2, 1901.

Mrs. Gordon continued to own the Brock property until her death November 25, 1930, and thereafter it was owned by her devisees until they conveyed it to Brock January 14, 1946. Davis, upon receiving his deed, took charge of the Front Street property. In 1926 he made and recorded a plat thereof, designating it as Lot 10 on his plat, no street being shown thereon. In 1929 Davis executed to the City of Cleveland a deed to a forty foot strip, east and west, extending south 300 feet, parallel to and adjoining on the east the Brock lot. That included the Kelly property. The Davis deed provided that the City of Cleveland would open up and grade as a street within twelve months the property therein conveyed, and in event the property should not be used as a street, or should be closed or abandoned, title should revert to Davis. The City, by an order, as consideration for the Davis deed, relinquished to Davis any right or title it might have had in that part of Front Street lying east of the property conveyed by Davis to the City. On October 11, 1930, the City reconveyed to Davis the strip Davis had conveyed to the City. It adopted an order reciting the property was not needed as a street and it did not intend to open up, work or use it as such.

It appears that from the time Davis got title to the property in 1915 to the date of the trial all of the lot bounded on the west by the Brock property and on the east by Jones' Bayou was assessed as privately owned property for municipal, county and state ad valorum taxes, and the taxes were paid thereon as such private property, and, for a part of the time, a front footage assessment was made and paid upon the north end thereof where it joined the south side of South Court Street.

Davis was in charge and control of the property from the time he bought it in 1915 to the date of his death, October 11, 1937. It appears that beginning about 1934 he rented a part of it to Earl Dennis, who erected a small structure thereon, in which he operated a soft drink stand, sold popcorn, etc., and who paid rent for the use

of the property. Another part of the lot was rented to Carl Davis, who operated a coal yard, sometimes called a "coal bin", thereon, and paid rent for such use. There is evidence another building was located on the property, but the facts about that are vague. After the death of Davis that situation was continued by his heirs. On March 6, 1946, the heirs executed the deed to Kelly. Even then it appears the coal bin was being operated, and another building was located, upon the part of the Front Street property not conveyed to Kelly.

Reverting again to an earlier date, it is shown that the heirs of Davis, while they were the owners of the property, and in 1938,. instituted an attachment proceeding against Dennis to enforce payment to them by him of rent for use of the premises, in which judgment was rendered for the plaintiff. That judgment was based upon the assumption the parcel occupied and being used by Dennis was private property.

Also, in the early part of 1939, when Mrs. Cain was renting the Brock property and operating her business therein, she filed with the Mayor and Aldermen of Cleveland a petition asking that tribunal to declare and abate as a fire hazard and a nuisance the Dennis Building and business. The petition as first presented grounded her right, first, upon her special interest in what she claimed was Front Street and which was being obstructed by the existence therein of the Dennis structure, and, second, upon her contention that such structure and business were, in their nature, fire hazards and dangerous to her business. However, before the hearing she amended her protest and eliminated therefrom all claim that the property involved was part of a street. The Mayor and Aldermen denied her contention that the Dennis structure and business constituted a fire hazard, or a nuisance.

At that time Brock was in the employ of Mrs. Cain, whom he later married, and was familiar with the entire situation. In fact, it appears that Brock had actual, or obtainable, information as to all the foregoing facts.

There is proof also that Mr. and Mrs. Brock made an effort themselves to rent from Davis all, or a part, of the north part of the Front Street property—at least that part being used by Dennis.

As stated, Kelly got his deed March 4, 1946. Kelly testified that he and Brock, before or about the time he, Kelly, purchased the property, had some discussion about the title. Kelly testified that Brock ''. . . didn't say anything about it being a street'', nor did Brock claim any interest or right in the property; that he told Brock he had heard there had been two court proceedings regarding the matter (meaning the attachment and nuisance proceedings above mentioned) which settled any question as to the title; that his attorney had examined into the question and he was satisfied; that after he, Kelly, had obtained his deed and before construction of his building was begun, that Brock told him he had had a survey made of his property, and he pointed out the line between the two properties and said this is my property and that is yours. The significance of this is that Brock not only did not claim any interest in the Kelly property but affirmatively disclaimed any right or interest therein. Brock denied some of this but the Chancellor had the right to believe Kelly where conflicts exist, and, under the state of this record, we must assume he did believe Kelly.

Kelly got a city permit to erect his building and entered into a contract with Scott Building and Supply Company to do that at a cost of $13,000.00. Scott started construction work about March 18, 1946. He testified that Brock never said anything to him at any time about the matter. Nor is it shown that Brock said anything else to Kelly until June 9, 1946, when he wrote Kelly a letter. In this letter he informed Kelly that he, Brock, purchased the property to the west; that he understood Kelly had purchased the 39.6 feet adjoining and immediately east of the Brock property; that Kelly and his sister, Mrs. Buckley, were in the course of constructing

a building on the Kelly property; that Brock understood that "The above tract of land 39.6 feet East and West was at one time dedicated as an alley . . . .", adding "I do not know whether the above described property is or is not legally an alley, but if it is, then as above mentioned, such would be advantageous to me"; that he, Brock, intended to proceed in court to legally determine whether the Kelly property was within a public alley, and that Kelly would proceed at his own risk with the construction of his building.

When this letter was received the construction work had been under way since March 18, almost three months; the foundation was laid; the walls were some nine feet high; windows framed; other substantial parts of the building had been constructed; much of the materials had been ordered especially for this building, this being necessary under conditions prevailing at that time. In other words, the building was then largely constructed. The contractor had been paid four thousand dollars and he estimated that if the work had then stopped the cost to Kelly, for the work which had been done and the materials which had been purchased would have been $9,750.00.

Under the conditions we do not think Brock has a right to require the Kelly building to be removed. He comes within the rule set out in 19 Am. Jur., pg. 787, Section 133, in these words, "... it is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which would call for notice or protest cannot afterwards assert his own title against such person". The principle is stated in different language and applied under varying facts in the following cases, more or less applicable to the situation involved herein: Staton v. Bryant, 55 Miss. 261; Evans v. Forstall, 58 Miss. 30; Frederic v. Mayers, 89

Miss. 127, 43 So. 677; Kelso v. Robinson, 172 Miss. 828, 161 So. 135.

Affirmed.

**Smith, J.**, took no part in this case.