COLLIER *v.* KING

No. 43275          January 18, 1965          170 So. 2d 632

*Bernard W. N. Chill,* Jackson; *John C. McLaurin,* Brandon, for appellant.

*McIntyre & McIntyre,* Brandon, for appellee.

Gillespie, J.

On February 12, 1949, Armetta Collier Watts conveyed the 20 acres of land involved in this suit to Harvey Collier, reserving unto herself a life estate. Harvey Collier had this deed duly recorded on February 14,

1949. He regarded this deed as a will but knew that he would get the property upon the death of Armetta Collier Watts. On March 8, 1957, Armetta Collier Watts executed a warranty deed to H. P. King (no relation to Oscar King), purporting to convey a fee simple title to the 20 acres of land.

Harvey Collier and Oscar King both lived near the 20 acres of land in question and had been neighbors for over thirty years. During the year 1958, Oscar King became interested in the 20 acres of land involved in this suit and went to see Harvey Collier. Collier told Oscar King that the property was owned by H. P. King, who lived at Pelahatchie, but made no mention whatever of his remainder interest in the land. Oscar King got in touch with H. P. King but they did not agree on the price at that time. Later on, approximately one year later, on May 16, 1959, Oscar King and H. P. King agreed on a price of $600 and H. P. King executed to Oscar King a warranty deed purporting to convey the fee simple title to the 20 acres of land. Shortly thereafter, Oscar King began construction of a residence on the 20 acres of land. Harvey Collier's house was within about 400 yards of the 20 acres and he observed the construction of the house by Oscar King from day to day. The total cost of the house was in excess of $7,000. Oscar King did not have the title examined when he purchased the land or at any other time.

A few weeks after Armetta Collier Watts' death on January 31, 1963, Harvey Collier notified Oscar King that he, Collier, owned the property. Collier then filed this suit seeking cancellation of Oscar King's claim to the land.

The issues for consideration by the chancellor raised by the original bill of Harvey Collier and the answer and cross-bill of Oscar King were: (1) Whether the claim of Oscar King to the land should be cancelled; (2) whether Harvey Collier was estopped from claiming

his legal interest in the land by reason of having misled Oscar King; and (3) whether Oscar King was entitled to a lien on the land for the sums expended by him in improving the property by building the house thereon.

The chancellor found that the deed from Armetta Collier Watts to Harvey Collier dated February 12, 1949, vested in Harvey Collier the fee simple title subject only to the life estate reserved by her, which life estate she subsequently conveyed to H. P. King, and which H. P. King conveyed to Oscar King. He found further that Harvey Collier had misled Oscar King into purchasing the property and building a house thereon; and that in good faith Oscar King thought he had a fee simple title. The final decree confirmed title in Harvey Collier subject to a lien for $7,000 in favor of Oscar King. Being aggrieved at this decree, Harvey Collier appealed and contends that he was entitled to a decree cancelling all claims of Oscar King and that the court erred in fixing the lien upon the land in favor of Oscar King for $7,000.

The principal question for our decision is whether the court erred in impressing a lien upon the property in favor of Oscar King. A subsidiary question is whether the court should have impressed a lien on the whole 20 acres, or whether the lien should have been limited to the house and curtilage.

■ ■ The rule is well established in this State that a life tenant is not entitled to recover from the remainderman, or have a lien on the remainder interest, for the cost of repairs and improvements made on the property by the life tenant. McDowell v. Arnold, 222 Miss. 80, 75 So. 2d 276 (1954). ■ ■ And equity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, by examining the land records or otherwise. ■ ■ One about to purchase land or make improvements thereon should ordinarily inquire into the public

records, and he may not claim the benefit of an estoppel when he does not do so even if the true owner remains silent at a time when he knowns another is about to purchase the land or make improvements thereon. Craft v. Everett, 237 Miss. 360, 115 So. 2d 133 (1959). But while the owner may not be required to act or speak regarding his title which is of public record, ▆▆ ▆ if he does speak or act he must do so consistently with his recorded title, and if such owner misleads another by affirmative statements in derogation of his record title and such other person in reliance thereon purchases the property or makes improvements thereon, he is estopped from asserting his legal rights against such other. Brock v. Kelly, 208 Miss. 323, 44 So. 2d 452 (1950). cf. Howie v. Baker, 232 Miss. 661, 100 So. 2d 113 (1958).

▆▆ Harvey Collier affirmatively misled Oscar King into believing that if he purchased the property from H. P. King he would get a good title. Then, after King paid for the land in good faith, believing he was getting a good title, Collier observed the day to day progress of the construction of the home without any mention of his remainder interest. The chancellor properly found that Oscar King was entitled to a lien.

▆▆ ▆ A serious question arises whether the lien should attach to the entire 20 acres of land or only upon the curtilage. Oscar King should be protected to the extent that the improvements have enhanced the value of the land, but at the least possible burden to Collier. ▆▆ ▆ We, therefore, remand the case so that the chancellor may determine whether, in his sound discretion upon such hearing as he may think proper, the lien will accomplish the purpose of protecting the interests of Oscar King if it is limited to the house and curtilage, ▆▆ ▆ which we here define as such space as is necessary and convenient, and is habitually used for family purposes, including an adequate yard and garden and room for necessary outbuildings, and for such decree in ref-

erence thereto as the chancellor may deem proper. The case is also remanded for proper proceedings for enforcement of the lien.

Affirmed and remanded for further proceedings consistent herewith.

*Kyle, P. J., and Ethridge, Rodgers and Patterson, JJ.,* concur.