# Supreme Court of Florida

_____

No. SC19-1313
_____

**SCOTTIE D. ALLEN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 3, 2021

PER CURIAM.

Scottie D. Allen appeals his conviction for first-degree murder and his sentence of death. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm Allen's conviction and sentence of death.

## BACKGROUND

Allen was indicted for the October 2, 2017, first-degree premeditated murder of Ryan Mason on June 25, 2018, and soon thereafter began asserting his right to self-representation. After finding Allen competent and conducting two inquiries under *Faretta*

*v. California*, 422 U.S. 806 (1975), the trial court ruled that Allen could represent himself pro se, without standby counsel. Allen's guilt phase occurred on February 19-20, 2018. In his opening statement, Allen told the jury that he would not be presenting any evidence or calling any witnesses because it was the State's burden to prove his guilt.

The evidence presented at trial established that while serving a twenty-five-year prison sentence for second-degree murder, Allen strangled Mason to death in the cell they shared at Wakulla Correctional Institution. Allen confessed to planning and carrying out Mason's murder, including to an investigator from the Florida Department of Law Enforcement (FDLE) during a recorded interview, which was played for the jury, without objection from Allen. As the trial court cogently explained in its sentencing order, the evidence showed that:

> [Allen] planned the murder for weeks after learning Mason had lied to him about the nature of the criminal offense that landed Mason in prison. Upon learning that Mason was convicted of child molestation, [Allen] decided he would kill him. [Allen] raped Mason periodically over the following two weeks to make Mason's life miserable. During this time, [Allen] was paying careful attention to the timing of the inmate head counts throughout each

day.  On October 1, 2017, [Allen] decided the following morning would be the day he killed Mr. Mason.

On the morning of October 2, 2017, in-between head counts, [Allen] raised and draped a sheet over the cell bars to keep anyone from being able to see into the cell.  [Allen] then committed the murder and immediately made himself a cup of coffee, sat down, ate half of a honey bun and finished the cup of coffee.

Allen then calmly reported to a correctional officer that he had murdered his cellmate, which resulted in the discovery of Mason's body.

During his recorded statement to the FDLE agent, Allen said that Mason was "kicking like crazy" and that, during the strangling, when Mason was still conscious, Allen told Mason, "I'm going to strangle the life out of you. . . . Tell the devil I said hello."

The medical examiner testified that Mason was choked with such force as to fracture his C6 vertebrae and that after three to five minutes of constant pressure, Mason suffered irreversible brain damage and died.  He further testified that the shirt found around Mason's neck was wrapped and knotted so tightly it was difficult to cut through with a surgical scalpel, and that in addition to the injuries indicating that Mason's cause of death was ligature

strangulation, Mason had injuries to his wrist, forearm, and ankle, as well as unusual bruising behind his left knee.

The State presented testimony that the DNA mixture obtained from the shirt found around Mason's neck was 130 billion times more likely to come from Allen and Mason than Mason and an unrelated individual. In addition, the DNA mixture obtained from the victim's left-hand fingernails was 700 billion times more likely to have come from Allen and Mason than Mason and an unrelated individual.

After the State rested, Allen elected not to testify and rested without presenting a defense. He also did not present a closing argument. The jury found Allen guilty of first-degree murder on February 20, 2019.[1]

The penalty phase occurred later the same day, and Allen, who continued to represent himself, did not present mitigation or argument to the penalty-phase jury. Following the State's presentation, Allen's jury unanimously found that the State had established beyond a reasonable doubt the existence of the

---

1. Allen's jury was instructed on first-degree premeditated murder.

following four aggravating factors: (1) Allen was previously convicted of a felony and under sentence of imprisonment; (2) Allen was previously convicted of a felony involving the use or threat of violence to another person; (3) the first-degree murder was especially heinous, atrocious, or cruel (HAC); and (4) the first-degree murder was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification (CCP).[2] In addition, the jury unanimously found that the aggravating factors it found the State had established beyond a reasonable doubt were sufficient to warrant a possible sentence of death; found that one or more individual jurors had not found that one or more mitigating circumstances was established by the greater weight of the evidence; and unanimously found that the aggravating factors it found the State had established beyond a reasonable doubt outweighed the mitigating circumstances. Finally, the jury unanimously found that Allen should be sentenced to death.

_____

2. The jury unanimously found that the State had not established beyond a reasonable doubt that the victim's murder was committed for financial gain.

Following the penalty-phase trial, Allen continued to represent himself and maintained his desire not to present mitigation during the *Spencer*[3] hearing. The trial court ordered a presentence investigation report (PSI) pursuant to Florida Rule of Criminal Procedure 3.710(b). Additionally, the trial court appointed amicus counsel to develop and present mitigation to the trial court at the *Spencer* hearing. Amicus counsel retained Dr. Martin Falb as a mental health expert, and Allen submitted to and cooperated with an evaluation by Dr. Falb.

At the *Spencer* hearing, amicus counsel's mitigation presentation included the testimony of a mitigation specialist, who testified regarding Allen's background, and the testimony of Dr. Falb, a forensic psychologist. Dr. Falb testified that he did not diagnose Allen with antisocial personality disorder because the psychologist who performed Allen's competency evaluation had already done so. However, Dr. Falb opined that as a result of Allen's antisocial personality disorder, he is "likely unable" to conform his conduct to the requirements of the law. Dr. Falb also

---

3. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

- 6 -

testified that Allen "suffered some extreme measures of trauma in terms of emotional abuse, physical abuse, and sexual abuse beginning at a young enough age, along with substance abuse," and that Allen received a "very, very high" score of six on the ten-question Adverse Childhood Experiences (ACE) test. Based on the testimony of the mitigation specialist during the *Spencer* hearing, Dr. Falb testified that Allen's ACE score could have been as high as eight out of ten. Dr. Falb further opined that it was likely Allen suffered from post-traumatic stress disorder (PTSD). In explaining his PTSD diagnosis, Dr. Falb testified that Allen told him during their interview, "I can't say that what I did to him [the victim] wasn't related to my being angry about what had happened to me [earlier in life], but I was mad that he had been lying to me [about why he was in prison] for nine months." Regarding Allen's statement, "I can't say that what I did to him wasn't related," Dr. Falb testified that this statement "makes the point" for "a recurrence of the PTSD of that experience of what happened to [Allen] when he was being molested back at the age of eight to eleven." However, Dr. Falb further testified that Allen's statement, "I was mad at him for lying

to me for nine months," was not "inconsistent with somebody rising to a level of anger if they're antisocial."

Following amicus counsel's mitigation presentation, the State relied on Florida Rule of Criminal Procedure 3.202 to argue that it was entitled to have Allen evaluated by its own mental health expert, Dr. Greg Prichard, for purposes of rebutting the testimony of Dr. Falb. Allen stated, "I will not submit to an interview by [the] prosecution's doctor." Despite voicing uncertainty about how to proceed in light of Allen's decision not to present mitigation—a circumstance which rule 3.202 does not address—the trial court ultimately ordered Allen to submit to an evaluation by the State's mental health expert. The trial court ruled that the evaluation would be limited in scope to the mitigation addressed by Dr. Falb and further told Allen that his "cooperation is appreciated" but that if, during Dr. Prichard's interview, Allen got "to a situation . . . outside what [Allen] want[ed] to answer, then [Allen should] just tell them that." Allen cooperated with Dr. Prichard's evaluation.

At the continued *Spencer* hearing on June 21, 2019, the State's mental health expert, Dr. Prichard, testified that he agreed with Dr. Falb that Allen has antisocial personality disorder and

further testified that "antisocial personality disorder is very much a driving factor for [Allen]." However, Dr. Prichard disagreed with Dr. Falb's PTSD diagnosis and testified that he did not see any indication of dissociation associated with PTSD. Dr. Prichard further testified that Allen told him "he was completely sober and straight the day the murder occurred," that Allen "said that he actually made the decision . . . on Friday that he was going to kill [the victim on] Sunday," and that Allen's statements regarding the murder indicate that the killing was "very calm and pretty well planned out." Consequently, Dr. Prichard opined that he "didn't see any indication of . . . mental, emotional disturbance anywhere around the time of the offense." Regarding the statutory mitigator that Allen's capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of law were substantially impaired, Dr. Prichard agreed with Dr. Falb's testimony that "antisocial personality disorder intervenes" when considering the mitigator. However, Dr. Prichard testified that Allen "could conform and he did understand," but acted "for his own selfish reasons." Dr. Prichard further opined that he did not see

any indication that Allen was under duress at the time of the murder.

Upon cross-examination by amicus counsel, Dr. Prichard acknowledged that his disagreement regarding Dr. Falb's PTSD diagnosis did not mean that Allen had not suffered trauma as a result of his background, including childhood sexual abuse. However, Dr. Prichard reiterated his position that he "definitely" disagrees with Dr. Falb's PTSD diagnosis.

Allen, who was still representing himself pro se, also cross-examined Dr. Prichard. While doing so, Allen referenced his "agreement to be interviewed by [Dr. Prichard] in our last court proceeding." Much of Allen's cross-examination of Dr. Prichard focused on why Dr. Prichard disagreed with Dr. Falb's PTSD diagnosis.

On redirect, Dr. Prichard reaffirmed that he disagreed with Dr. Falb's PTSD diagnosis and testified that "everything with Mr. Allen is better explained by personality issues than any kind of PTSD response associated with trauma." At the conclusion of Dr. Prichard's testimony, the prosecutor stated, "[T]he evidence presented at trial is what we're going to be relying on for the

substantial amount of the aggravating -- or for the aggravating circumstances.  This was just rebuttal to the Amicus case."

At the conclusion of the *Spencer* hearing, the trial court discussed sentencing memoranda with the parties.  Allen stated that he would submit a pro se memorandum, in which he would "be arguing toward the findings of Dr. Falb as far as the PTSD diagnosis" and the "extreme mental distress . . . mitigator as well." Allen subsequently filed his sentencing memorandum, in which he stated, "I cannot refute the evidence that was presented which led to a finding of guilt[,] nor can I argue against the four aggravating factors . . . which led to a 12-0 jury verdict for a sentence of death." Allen further stated, "I believe the amicus curiae you appointed for mitigation did a great job given the material and restrictions they had to contend with.  So I leave any findings they made or established unargued and supported.  The one concern I have though is the testimony of the State's witness Dr. Prichard.  I found it to be made of 3⁄4 truths and spin as he said his 'job' was to refute the findings of Dr. Falb.  I don't think he did that, as I tried to establish during questioning of him during his testimony."

Thereafter, the trial court followed the jury's recommendation and sentenced Allen to death on July 23, 2019. The sentencing order reflects that the trial court found and assigned great weight to each of the four aggravating factors that Allen's jury found to exist beyond a reasonable doubt.

The trial court rejected the statutory mitigating circumstance proposed by amicus counsel that the capital felony occurred while Allen was under the influence of extreme mental or emotional disturbance. In so doing, the trial court explained, in pertinent part:

> The Court finds competent evidence was presented to establish [Allen] has PTSD *and* Anti-Social Personality Disorder. The Court, however, does not find [Allen] was under extreme mental or emotional disturbance at the time the murder was committed. The murder was planned for weeks and was deliberate. The evidence clearly established [Allen] was calm and coherent immediately following the murder. There was no testimony or other credible evidence that [Allen] exhibited any signs of being under the influence of drugs, alcohol or from an episodic PTSD event at the time of the murder.

However, the trial court found one statutory mitigating circumstance to which it assigned moderate weight, namely that Allen's ability to conform his conduct to the requirements of the law

- 12 -

is substantially impaired "by adverse childhood experiences that have rendered him less than effective at making good decisions." In addition, the trial court found the following five nonstatutory mitigating circumstances and assigned them the noted weight: (1) the defendant has been diagnosed with alcohol abuse and drug dependency (some weight); (2) the defendant was diagnosed with major depression (moderate weight); (3) the defendant was raised in a dysfunctional family setting (great weight); (4) the defendant was courteous, respectful, and considerate to the court during every court appearance (some weight); and (5) the defendant did not want his family contacted for mitigation purposes (some weight).

In sentencing Allen to death, the trial court further found as follows:

> The Court has conducted its own independent evaluation weighing the aggravating factors found by the jury in their verdict and weighing the mitigating circumstances presented and reasonably established by the evidence. The Court assigned great weight to each of the four aggravating factors. The Court finds the aggravating factors cumulatively outweigh the mitigating circumstances and a sentence of death is appropriate for the murder of Ryan Mason.

## ANALYSIS

In this direct appeal, Allen raises four unpreserved challenges to his sentence of death.  Specifically, Allen argues that (1) the trial court's failure to renew the offer of counsel before commencing the penalty phase constitutes fundamental error; (2) a guilt-phase jury instruction and a penalty-phase argument by the prosecutor violate *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and collectively amount to fundamental error; (3) fundamental error occurred because the State violated Allen's Fifth Amendment right against compelled self-incrimination during the *Spencer* hearing; and (4) the trial court fundamentally erred by failing to instruct the penalty-phase jury that it must determine beyond a reasonable doubt that the aggravating factors were sufficient to justify the death penalty and that those factors outweighed the mitigating circumstances. The State raises the sufficiency of the evidence.  *See* Fla. R. App. P. 9.142(a)(5).

### (1) Failure to Renew Offer of Counsel

Allen first argues that the trial court's failure to renew the offer of counsel before commencing the penalty phase constitutes fundamental error.  We review this question of law de novo, *see*

- 14 -

*State v. Smith*, 241 So. 3d 53, 55 (Fla. 2018), and hold that Allen is not entitled to relief because the trial court cured the error, thereby eliminating the need to address whether, had the error not been cured, it would amount to fundamental error.

Contrary to our precedent and Florida Rule of Criminal Procedure 3.111(d)(5), the trial court failed to renew the offer of counsel between the guilt and penalty phases. *See Traylor v. State*, 596 So. 2d 957, 968 (Fla. 1992) (interpreting article I, section 16 of the Florida Constitution as entitling a criminal defendant to "decide at each crucial stage of the proceedings whether he or she requires the assistance of counsel" and concluding that "[w]here the right to counsel has been properly waived, . . . the waiver applies only to the present stage and must be renewed at each subsequent crucial stage where the defendant is unrepresented"); Fla. R. Crim. P. 3.111(d)(5) ("If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel."); *see also Muehleman v. State*, 3 So. 3d 1149, 1156-57 (Fla. 2009) (applying *Traylor* and rule 3.111(d)(5) to a penalty-phase trial).

Although the offer of counsel was not renewed before the penalty phase began, at the State's urging, immediately after the penalty-phase jury returned its recommendation, and again, sua sponte, at a hearing the next day, the trial court inquired of Allen as to whether, if the offer of counsel had been renewed between the guilt and penalty phases, he would have accepted the offer of penalty-phase counsel. Further, upon the State's request that an additional *Faretta* inquiry accompany the renewed offer of counsel, the trial court conducted a "nunc pro tunc *Faretta* inquiry"—the *third Faretta* inquiry in the case. In his responses to the trial court, Allen consistently represented that he would have waived penalty-phase counsel and that he would have continued to exercise his right to self-representation had the trial court renewed the offer of counsel before commencing the penalty phase. The trial court found that Allen's decisions, including to waive counsel, were knowing, voluntary, and intelligent.

Because the record demonstrates that the trial court cured the error while it still had jurisdiction to do so, by confirming with Allen that he had not wavered in his decision to represent himself, *see Traylor*, 596 So. 2d at 968, we hold that there is no basis for

- 16 -

appellate relief.  *Cf. Sullivan v. State*, 170 So. 2d 632, 635 (Fla. 1974) ("It is well-established law that where the trial judge has extended counsel an opportunity to cure any error, and counsel fails to take advantage of the opportunity, such error, if any, was invited and will not warrant reversal.").

### (2) *Caldwell*

Next, Allen argues that the trial court's guilt-phase jury instruction that it was "the judge's job to determine a proper sentence" if the jury found Allen guilty of first-degree premeditated murder, combined with the prosecutor's statement during the State's penalty-phase opening argument that it would ask the jury to return a "recommendation" of death, violate *Caldwell* and collectively constitute fundamental error requiring a new penalty-phase trial.  We review this question of law de novo, *see Davis v. State*, 136 So. 3d 1169, 1201 (Fla. 2018), and hold that Allen is not entitled to relief.

Taking the statements in reverse order, no error, let alone fundamental error, occurred as a result of the prosecutor's statement that he would ask the jury to return a "recommendation" of death because the statement did not "improperly describe[] the

role assigned to the jury by local law." *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994) ("[T]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.") (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)). Under the plain text of Florida's death penalty statute, a sentencing "recommendation" is precisely what the penalty-phase jury provides. *See* § 921.141(2), Fla. Stat. (2018).

Regarding the guilt-phase instruction, "[w]hen the jury is to be involved in a penalty phase," the standard jury instructions direct trial courts to "omit" from the instructions the following italicized sentence: "Your duty is to determine if the defendant has been proven guilty or not, in accord with the law. *It is the judge's job to determine a proper sentence if the defendant is found guilty.*" Fla. St. Jury Instr. (Crim.) 3.10 (emphasis added). The purpose of the italicized sentence is to prevent a jury pardon on the issue of guilt. *See generally Broughton v. State*, 790 So. 2d 1118, 1119 (Fla. 2d DCA 2001) (explaining that the italicized sentence reflects "the evolving policy of removing from a noncapital jury any knowledge of potential penalties for the crimes with which a defendant is

charged" to ensure " 'that the jury should decide a case in accordance with the law and the evidence and disregard the consequences of its verdict' ") (quoting *Legette v. State,* 718 So. 2d 878, 881 (Fla. 4th DCA 1998)).  Precluding an improper jury pardon on the issue of guilt is just as relevant in a capital case as a noncapital case.  However, because the instruction is an incomplete statement of Florida law where the jury may go on to participate in a penalty phase, the trial court should not have included it in the guilt-phase instructions.

In addressing the instructional error, the State argues that Allen "waived" any claim that the guilt-phase instruction constitutes fundamental error because he "agreed" to it.  The State is correct that Allen stated he had "no objection" to the entirety of the guilt-phase instructions read by the trial court.  However, the State's attempt to label Allen's statement as a "waiver" fails because the statement does not amount to "the voluntary and intentional relinquishment of a known right" that is necessary to establish a "waiver."  *Major League Baseball v. Morasani,* 790 So. 2d 1071, 1077 n.12 (Fla. 2001).  The record is devoid of any indication that

Allen knew the instruction at issue deviated from the standard jury instruction, but agreed to its use anyway.

Although the State's claim is more properly analyzed as one of "invited error," that label also does not fit the facts. This Court's precedent requires more than "mere acquiescence" to an incorrect jury instruction to support the conclusion that the defendant invited the error and thereby is precluded from challenging the error on appeal, even under a fundamental-error standard. *See Lowe v. State*, 259 So. 3d 23 at 50 (Fla. 2018). More specifically, to support a finding of invited error, defense counsel must either request the incorrect instruction or be aware an instruction is incorrect but agree to it anyway:

> [This Court has] also recognized, in the context of certain erroneous jury instructions, a fundamental error analysis exception "where defense counsel affirmatively agreed to or requested the incomplete instruction." *State v. Lucas*, 645 So. 2d 425, 427 (Fla. 1994), *receded from on other grounds by State v. Spencer*, 216 So. 3d 481 (Fla. 2017). However, [this Court] also recognized in that context that the exception did not apply "where defense counsel merely acquiesced to [the incomplete] instructions." *Spencer*, 216 So. 3d at 486.

*Id.*[4]

Applying *Lowe* to Allen's case, the conduct necessary to support a finding of invited error did not occur.  However, we agree

---

4.  In *Lowe*, we also cited approvingly to *Black v. State*, 695 So. 2d 459, 461 (Fla. 1st DCA 1997), for the proposition that "defense counsel [(1)] must be aware that an incorrect instruction is being read and [(2)] must affirmatively agree to, or request, the incomplete instruction."  259 So. 3d at 50.  However, this language has proven to be problematic, as it has caused some courts to conflate two different factual scenarios—i.e., acquiescing to an incorrect instruction versus requesting or affirmatively agreeing to an incorrect instruction—and improperly label unpreserved error as unreviewable, invited error.  *See, e.g.*, *Calloway v. State*, 37 So. 3d 891, 893, 896-97 (Fla. 1st DCA 2010) (concluding that the defendant "acquiesced" to alleged errors in jury instructions, thereby prohibiting reversal under the invited-error doctrine, where "defendant specifically agreed to the instructions and stated he had no objections to them as proposed [at the charge conference] and as read [to the jury]").  To be clear, acquiescing to an incorrect instruction constitutes a failure of preservation that does not preclude fundamental-error review.  *See Crain v. State*, 894 So. 2d 59, 68 (Fla. 2004) (holding that the defendant failed to preserve his challenge to a jury instruction for appeal where "trial counsel did not object to the instruction when presented with a packet of corrected jury instructions before closing arguments"); *Suarez v. Dugger*, 527 So. 2d 190, 193 (Fla. 1988) ("Because trial counsel failed to object to the absence of [certain jury] instructions the matter was not properly preserved . . . .").  In contrast, unreviewable, invited error occurs when a party either proposes (i.e., requests) an instruction and therefore cannot argue against its correctness on appeal, or when a party is aware a standard instruction or an instruction proposed by another party is incorrect but agrees to its use anyway and as a result of having affirmatively agreed to the instruction cannot argue against its correctness on appeal.  *See Lowe*, 259 So. 3d at 50.

with the State on the merits that the trial court's erroneous inclusion of the guilt-phase instruction at issue did not violate *Caldwell* or amount to fundamental error.

In *Caldwell*, a plurality of the Supreme Court ruled that "it is constitutionally impermissible [under the Eighth Amendment] to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell*, 472 U.S. at 328-29. Applying this rule, the Supreme Court vacated the defendant's death sentence after finding that his jury was "led to believe that responsibility for determining the appropriateness of a death sentence rest[ed] not with the jury but with the appellate court which later reviews the case." *Id.* at 323. Since *Caldwell*, the Supreme Court has explained that, as a result of precedent governing its plurality decisions, it "read[s] *Caldwell* as 'relevant only to certain types of comment--those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.'" *Romano*, 512 U.S. at 9 (quoting *Darden v. Wainwright*, 477 U.S. 168, 184 n.15 (1986)).

In addressing *Caldwell*'s application to Florida's capital sentencing scheme, this Court has explained that "[i]n *Caldwell*, the United States Supreme Court was considering the application of the Mississippi death penalty procedure which is dissimilar to that utilized by Florida" because "[t]he Florida procedure does not empower the jury with the final sentencing decision; rather, the trial judge imposes the sentence." *Combs v. State*, 525 So. 2d 853, 856 (Fla. 1988). More recently, in *Davis v. State*, 136 So. 3d 1169, 1201 (Fla. 2014), this Court rejected the argument that the same guilt-phase jury instruction that Allen challenges here violates *Caldwell*. *See also id.* (rejecting the related claim that the prosecutor "improperly disparaged the role of the jury" in violation of *Caldwell* by referencing the jury's "recommendation" as "advisory" and stating that "the final [sentencing] decision rests with [the trial court]").

We recognize that, since *Combs* and *Davis*, Florida's capital sentencing scheme has changed in light of the mandate of *Hurst v. Florida*, 577 U.S. 92, 102-03 (2016), that the Sixth Amendment requires a jury to unanimously find beyond a reasonable doubt the fact that renders the defendant eligible for imposition of the death

sentence—i.e., the existence of a statutory aggravating circumstance, *State v. Poole*, 297 So. 3d 487, 501-03 (Fla. 2020); *see* § 921.141(2)(a)-(b), Fla. Stat. (2018). Also, Florida's capital sentencing scheme has since been amended in additional ways, including requiring the jury's recommendation for death to be unanimous, *see* § 921.141(2)(c), and precluding the trial court from imposing a sentence of death if the jury recommends a sentence of life without the possibility of parole, *see* § 921.141(3)(a)1. Despite these changes and the fact that the guilt-phase instruction in Allen's case was an incomplete statement of Florida law, Florida's statutory scheme remains a hybrid sentencing scheme that does not place the ultimate responsibility for sentencing the defendant on the jury. *See* § 921.141(2)-(4).

Moreover, in analyzing whether the "remarks to the jury improperly described the role assigned to the jury by local law" so as to violate *Caldwell*'s mandate against "mislead[ing] the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision," *Romano*, 512 U.S. at 9 (quoting *Dugger*, 489 U.S. at 407, and then *Darden*, 477 U.S. at 184 n.15), we cannot myopically focus on a

- 24 -

single statement or instruction.  Rather, *Caldwell* claims are properly evaluated by "look[ing] to the 'total trial scene,' including jury selection, the guilt phase of the trial, and the sentencing hearing, examining both the court's instructions and counsel's arguments to the jury."  *Barrientes v. Johnson*, 221 F.3d 741, 777 (5th Cir. 2000) (quoting *Montoya v. Scott*, 65 F.3d 405, 420 (5th Cir. 1995)).

In Allen's case, despite the guilt-phase instructional error, the record establishes that the jury was properly informed as to its role in Allen's sentencing, including that if the jury found Allen guilty of first-degree premeditated murder, a separate penalty-phase trial would occur in which the jury's role would be to determine Allen's eligibility for the death penalty and recommend the appropriate sentence.  Large portions of jury selection were devoted to addressing the jury's role should the case proceed to a penalty phase, including the death qualification of the jury, and the trial court properly instructed the jury regarding its role during the penalty phase.  Thus, no *Caldwell* violation occurred.

Nor did the guilt-phase instructional error amount to fundamental error in light of the correct penalty-phase jury

instructions and accurate descriptions of the jury's role in sentencing that otherwise permeated Allen's trial. *See Bush v. State*, 295 So. 3d 179, 212 (Fla. 2020) (explaining that where, as here, the claim of fundamental error relates to the death sentence, "fundamental error" is error that "reaches down into the validity of the trial itself to the extent that a . . . jury recommendation of death could not have been obtained without the assistance of the alleged error") (quoting *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001)).

Accordingly, we deny relief as to this claim.

### (3) Fifth Amendment

Next, Allen argues that the State's introduction of his statements through Dr. Prichard's rebuttal testimony during the *Spencer* hearing violated his Fifth Amendment right against compelled self-incrimination and that the error was fundamental. We review this legal issue de novo. *See Smith*, 241 So. 3d at 55.

Compelling the mental health examination of a defendant during the penalty phase of a capital trial potentially implicates the Fifth Amendment protection against any person being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see Estelle v. Smith*, 451 U.S. 454, 468 (1981) ("A

criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."); *see also generally Burns v. State*, 699 So. 2d 646, 651 (Fla. 1997) ("[T]he Fifth Amendment right against self-incrimination, made applicable to the States through the Fourteenth Amendment, continues through the sentencing phase of a capital murder trial.").

However, permitting the State's mental health expert to examine a capital defendant in order to rebut the defense's penalty phase mental health expert testimony *does not* violate the Fifth Amendment right against self-incrimination. *Davis v. State*, 698 So. 2d 1182, 1191 (Fla. 1997); *see also Philmore v. State*, 820 So. 2d 919, 932-33 (Fla. 2002) (rejecting capital defendant's argument that "a compelled mental health evaluation under Florida Rule of Criminal Procedure 3.202 impermissibly requires the defendant to forego either his constitutional right to present mitigating evidence or forego his constitutional right not to be a witness against himself" and "conclud[ing] that there is no error, let alone fundamental error, in allowing the State to subject the defendant to

a mental health examination after the defendant decides to present mitigation"); *Dillbeck v. State*, 643 So. 2d 1027, 1030 (Fla. 1994) (holding trial court did not abuse discretion "in striving to level the playing field by ordering Dillbeck to submit to a prepenalty phase interview with the State's expert" where "Dillbeck planned to, and ultimately did, present extensive mitigating evidence in the penalty phase through defense mental health experts who had interviewed him").

Allen's case presents facts that do not neatly fit within this Court's precedent or the text of rule 3.202, which establishes the procedure by which the State's mental health expert may examine a defendant who has been convicted of capital murder with respect to the "mitigating circumstances the defendant expects to establish through expert testimony" and provides consequences for the defendant's refusal to cooperate. Fla. R. Crim. P. 3.202(d)-(e). Here, Allen *declined* to present any mitigation to the penalty-phase jury or to the trial court during the *Spencer* hearing. However, the trial court exercised its discretion to appoint amicus counsel to develop and present mitigation during the *Spencer* hearing. Thus, it was the trial court's decision, not Allen's, that mitigation should be

presented on Allen's behalf. Consequently, it was the trial court's decision, not Allen's, that resulted in Allen's evaluation by amicus counsel's mental health expert, Dr. Falb, which in turn resulted in the trial court compelling Allen's examination by the State's rebuttal mental health expert, Dr. Prichard, and the subsequent introduction of Allen's compelled statements through both experts.

These facts suggest the making of a Fifth Amendment quandary.[5] But, there is more. Allen does not challenge his compelled evaluation by amicus counsel's expert, Dr. Falb. On the contrary, in the pro se sentencing memorandum that Allen filed in the trial court, he adopted amicus counsel's mitigation presentation. Moreover, in this appeal, to remedy the alleged Fifth Amendment violation, Allen seeks to retain the benefit of the mental

---

5. As the State's brief suggests, allowing the trial court to force a mitigation presentation upon an unwilling, competent defendant in order to avoid a potential Eighth Amendment problem, *see generally Muhammad v. State*, 782 So. 2d 343, 363-64 (Fla. 2001), that no United States Supreme Court decision says exists also potentially implicates the conformity clause of the Florida Constitution, *see* art. I, § 17, and the right to self-representation under both the United States and Florida Constitutions. However, these issues were not raised below, and it is unnecessary to consider them to resolve the Fifth Amendment claim that Allen raises on appeal.

health mitigation established through Dr. Falb's testimony but strike the rebuttal mental health testimony that the State presented through Dr. Prichard.

We hold that by making the mental health mitigation presented by amicus counsel his own, Allen has forfeited his claim. The Fifth Amendment is a shield, not a sword or a scalpel, *cf. Kansas v. Cheever*, 571 U.S. 87, 94 (2013) ("[W]hen a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination."), and it does not provide cover for unrebutted mental health mitigation, *cf. Philmore*, 820 So. 2d at 932-33 ("[T]here is no error, let alone fundamental error, in allowing the State to subject the defendant to a mental health examination after the defendant decides to present mitigation."); *see also Estelle*, 451 U.S. at 468 (limiting availability of Fifth Amendment claim to "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence").

However, even if we were to accept Allen's argument that the Supreme Court's decision in *Estelle* requires us to conclude that a Fifth Amendment violation occurred, he still would not be entitled

- 30 -

to relief. Any Fifth Amendment error in admitting Allen's compelled statements through Dr. Prichard would not satisfy the applicable standard of fundamental error that applies to our review of Allen's unpreserved Fifth Amendment claim. *See Smith*, 241 So. 3d at 55. The first-degree murder at issue was substantially aggravated and included three of the qualitatively weightiest aggravators in Florida's capital sentencing scheme: CCP, HAC, and prior violent felony. *See Damas v. State*, 260 So. 3d 200, 216 (Fla. 2018). The mitigation, which included the trial court's crediting of Dr. Falb's PTSD diagnosis over Dr. Prichard's rebuttal testimony that Allen does not have PTSD, was comparatively minimal. Moreover, the record is clear that Allen's statements to Dr. Prichard were used for purposes of rebutting mitigation, not to establish aggravation that would have rendered Allen eligible for the death penalty. Any error in admitting Allen's statements through the rebuttal testimony of Dr. Prichard during the *Spencer* hearing did not "reach[] down into the validity of the trial itself to the extent that [the sentence of death] could not have been obtained without the assistance of the alleged error." *Bush*, 295 So. 3d at 212. Accordingly, any error was not fundamental. *Id.*

Therefore, we deny relief as to this claim.

## (4) Penalty-Phase Jury Instructions

In the last issue Allen raises on appeal, he argues that the trial court fundamentally erred by failing to instruct the jury that it must determine beyond a reasonable doubt whether the aggravating factors were sufficient to justify the death penalty and whether those factors outweighed the mitigating circumstances. We have repeatedly held that "these determinations are not subject to the beyond a reasonable doubt standard of proof." *Newberry v. State*, 288 So. 3d 1040, 1047 (Fla. 2019) (citing *Rogers v. State*, 285 So. 3d 872, 878-79 (Fla. 2019)); *see also Rogers*, 285 So. 3d at 886 (holding that "the sufficiency and weight of the aggravating factors and the final recommendation of death" are not elements and "are not subject to the beyond a reasonable doubt standard of proof"). Although Allen urges us to reconsider our precedent, he fails to demonstrate that it is "clearly erroneous." *Poole*, 297 So. 3d at 507. Accordingly, because the trial court did not err, let alone fundamentally so, in instructing the penalty-phase jury, we deny relief as to this claim.

## (5) Sufficiency

"In appeals where the death penalty has been imposed," regardless of whether the defendant raises the sufficiency of the evidence as an issue on appeal, this Court "independently reviews the record to confirm that the jury's verdict is supported by competent, substantial evidence." *Davis v. State*, 2 So. 3d 952, 966-67 (Fla. 2008); *see also* Fla. R. App. P. 9.142(a)(5). "In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt." *Bradley v. State*, 787 So. 2d 732, 738 (Fla. 2001).

Sufficient evidence supports Allen's conviction for first-degree murder under the theory that the murder was premeditated. *See Glover v. State*, 226 So. 3d 795, 804 (Fla. 2017) (explaining that to prove first-degree premeditated murder, the State must establish that (1) the victim is dead, (2) the victim's death was premeditated, and (3) the victim's death resulted from the criminal act of the defendant). Allen confessed multiple times to planning the victim's killing and to strangling the victim to death. DNA evidence

collected from the shirt around the victim's neck and from under the victim's fingernails and testimony from the medical examiner corroborate Allen's confessions. Accordingly, the evidence is sufficient to support Allen's conviction.

## CONCLUSION

For the foregoing reasons, we affirm Allen's conviction for first-degree murder and his sentence of death.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

Although the trial court failed to renew the offer of counsel before Allen's penalty phase began, the trial court subsequently conducted multiple inquiries during which Allen maintained his decision to represent himself. Because Allen's repeated refusals of counsel throughout the trial proceedings corroborate his belated waiver, I agree that he is not entitled to relief.

- 34 -

However, I adhere to the view expressed in my dissenting opinion in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020) (receding from proportionality review requirement in death penalty direct appeal cases), and consequently, I can only concur in the result.

An Appeal from the Circuit Court in and for Wakulla County,
    Ronald Wallace Flury, Judge –652018CF000203CFAXMX

Jessica Yeary, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida,

    for Appellee